UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER STEIN, : | |
| Plaintiff, : | CIVIL ACTION NO. 3:21-cv-0272 |
| v. : | (JUDGE MANNION) |
| MERRICK GARLAND, : Attorney General, U.S. DEPARTMENT OF JUSTICE, : | |
| Defendant. : | |

**MEMORANDUM**

**I.   BACKGROUND**

Pending before the court is defendant's motion for summary judgment under Federal Rule of Civil Procedure 56(a). (Doc. 15). On February 15, 2021, plaintiff filed a complaint against the defendant alleging a hostile work environment (Count I) and retaliation (Count II). (Doc. 1). Defendant answered on April 29, 2021. (Doc. 7). Fact discovery was completed on December 31, 2021. On January 31, 2022, Defendant moved for summary judgment. (Doc. 15). The defendant filed a brief in support on February 14, 2022. (Doc. 16). The plaintiff filed a brief in opposition to the motion for

summary judgment on April 5, 2022. (Doc. 21). Defendant then filed a reply brief to plaintiff's brief in opposition on April 19, 2022. (Doc. 24).

This case arises from the events of August 8, 2017 where an encounter between Officer Stein and Officer Eisenmann occurred at USP Canaan in the officer's mailroom. Officer Stein and Officer Eisenmann had a brief relationship prior to the August 8, 2017 incident. While discussing the return of Officer Eisenmann's furniture, Officer Eisenmann began screaming that Officer Stein was a "whore." Officer Stein immediately reported the actions of Officer Eisenmann to Lieutenant Bodge.

Plaintiff was immediately allowed to leave work to file a Protection From Abuse Petition ("PFA") against Officer Eisenmann. Plaintiff returned a copy of the emergency PFA to USP Canaan on the same day, but did not return to work. Also on the same day, Warden Baltazar convened a Threat Assessment Committee to investigate the verbal altercation and see what other preventive measures were needed. On August 8, 2017, the Threat Assessment Committee interviewed Officer Eisenmann. (Doc. 17 at ¶40). On August 16, 2017, Officer Stein was interviewed by the Threat Assessment Committee. The Committee put forth a Personal Protection Plan ("PPP") on August 30, 2017.

Officer Eisenmann was assigned to the camp at USP Canaan, which is located approximately one mile away from the penitentiary. He was prohibited from entering the same building as Officer Stein without contacting his captain and receiving an escort. Officer Eisenmann was also issued a Cease and Desist Order directing him to not have any unprofessional contact with Officer Stein. (Doc. 17 at ¶96-98).

Under the PPP, plaintiff kept her bidded post, would not attend training with Officer Eisenmann, and was required to report any contact with Officer Eisenmann made with her while she was performing her official duties. (Doc. 17 at ¶110-112).

While attending court appearances, Officer Stein used her annual and sick leave. Officer Eisenmann applied for and was granted administrative leave to attend court appearances on August 28, 2017 and August 29, 2017. Officer Stein later requested undetermined administrative leave because she believed she needed leave "until safe boundaries were in place." (Doc. 20-4 at 4).

On September 15, 2017, Officer Stein requested leave through a union representative, which was denied. (Doc. 20-4 at 4). The union representative stated, "they had numerous female staff that were already on admin leave

that the warden didn't want another one on admin leave also." (Doc. 17-1 at 62-63 (67:19-25; 68:1-2)). On September 26, 2017, Officer Stein requested leave from Captain Hollingsworth and was denied. (Doc. 20-4 at 5). On September 27, 2017, Officer Stein requested administrative leave from human resources and was denied. Warden Baltazar explained that they felt they would be able to keep Officer Stein and Officer Eisenmann separated and keep Officer Stein safe while at work. (Doc. 17-1 at 196 (71:9-11)).

After administrative leave was denied, Officer Stein used her sick and annual leave time. Once this time was depleted, Officer Stein was initially marked AWOL, but the initial marking was subsequently corrected to leave without pay. (Doc. 17-1 at 335-36).

Officer Stein then went on leave beginning on June 14, 2018 due to an injury she sustained at work. On June 21, 2018, Officer Stein was informed by Associate Warden Parr that Officer Eisenmann would be brought into the penitentiary due to staffing shortages. Officer Stein returned to work on February 25, 2019. Officer Eisenmann would exit the incoming staff screening room where Plaintiff was placed on light duty, but the two would not come into contact. (Doc. 20-4 at 8).

During March of 2019, Officer Stein sent emails to USP Canaan's new administration to see if anything had changed. Plaintiff met with the new warden, Eric Bradley. (Doc. 20-4 at 8).

On October 17, 2019, Officer Eisenmann voluntarily took an overtime shift, which put him in plaintiff's post at USP Canaan. (Doc. 21). Plaintiff's Lieutenants informed her to stay in the property room. On October 24, 2019, Officer Eisenmann again voluntarily took a post that was directly assigned with Officer Stein. (Doc. 21). On November 8, 2019, Officer Eisenmann sent an email to Officer Stein through the work email system regarding an inmate's property stating that the inmate was "released from the SHU last week I believe and said he did not receive his property. Can you please check and see if he has any property at all in the property room. Thank you." (Doc. 25).

## II.    DISCUSSION[1]

### a. Hostile Work Environment Claim

---

[1] Since defendant and plaintiff state in their respective briefs the proper legal standard for a motion for summary judgment under Rule 56, the court will not repeat it herein. Suffice to say that in deciding a motion for summary judgment, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. See Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for "an employer … to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment … because of such individual's race, color, religion, or national origin." 42 U.S.C. §2000e-2(a)(1). Title VII also bars "a discriminatory hostile or abusive environment." In re: Tribune Media Company, 902 F.3d 384, 399 (3d Cir. 2018) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To evaluate whether a workplace environment is hostile or abusive, the Supreme Court has explained that a court should look to the entire circumstances and "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris, 510 U.S. at 23).

The Third Circuit has explained that a hostile work environment claim requires a plaintiff to show: (1) the employee suffered intentional discrimination because she is a member of a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) the existence of

*respondeat superior* liability. Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (citing Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)).

The Supreme Court has written that "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Connell v. Nicholson, 318 Fed. App'x 75, 77 (3d Cir. 2009) (internal quotation marks omitted) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

To understand the totality of the circumstances surrounding the August 8, 2017 incident, one must be aware of several actions that occurred as a consequence of the incident. The state court granted Officer Stein an emergency PFA. Additionally, the defendant took several steps to prevent further incidents at work. A Threat Assessment Committee was convened that interviewed Officer Eisenmann and later interviewed Officer Stein. The Threat Assessment Committee issued a PPP that would ensure separation between the officers. Defendant confirmed that Officer Stein would keep her bidded post at USP Canaan. Going forward, Officer Eisenmann was

reassigned to the camp at USP Canaan, which would keep them separated while at work.

For conditions to satisfy the "severe or pervasive" standard, the conduct must "alter the conditions of [the employee's] employment and create an abusive working environment." Moody v. Atlantic City Board of Education, 870 F.3d 206, 214-15 (quoting Meritor Sav. Bank, FSB v. Vinaon, 477 U.S. 57, 67). "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (citation and internal quotation marks omitted).

While sorting out her PFA, Officer Stein took sick and annual leave. Officer Stein alleges that she was denied administrative leave while Officer Eisenmann was permitted to take administrative leave. The defendant, for the purpose of this motion, does not contest that Officer Stein requested leave. Officer Stein requested administrative leave through her union representative, Captain Hollingsworth, and from human resources. Each

request was denied. (Doc. 24). However, the reason for Officer Stein's requested leave differed from Officer Eisenmann's request in that Officer Stein requested administrative leave "until safe boundaries were in place." (Doc. 20-4 at 4). Officer Eisenmann's requested leave was to attend the court hearings related to the state court PFA matter. Warden Baltazar explained that plaintiff's leave was denied because "Ms. Stein was protected inside the penitentiary because there was a screening site" and additional safety measures in place. (Doc. 17-1 at 196 (71:9-11)). After the August 8, 2017 incident, Officer Stein and Officer Eisenmann did not have any further verbal or physical incidents at work. (Doc. 17 at ¶¶71, 110-112, 122; Doc. 20 at ¶¶71 110-112, 122; Doc. 20-4 at 4-5)).

The Third Circuit has explained, "in considering the totality of the circumstances, we filter out 'simple teasing, offhand comments, and isolated incidents." Kokinchak v. Postmaster General of the Unites States, 677 F. App'x 764, 767 (3d Cir. 2017). In Kokinchak, the court explained that the mere presence of the harasser did not create a hostile work environment stating, "[plaintiff] 'does not allege that [her harasser] ever touched her sexually, was physically threatening, made lewd or inappropriate comments, or even that [her harasser] spoke to her at all.'" Id. The court reasoned that

with occasional and sporadic presence near the plaintiff, it could hardly be considered severe and with the claimed incidents spanning over a few years, could hardly be considered pervasive. "While they may have been subjectively unwelcomed by [plaintiff]," the court explained, "an objective person could not conclude they altered the terms and conditions of her workplace." Id. at 677-78.

The two occasions where Officer Eisenmann was physically present at the workplace and one email sent from him to the plaintiff do not give rise to the severe or pervasive conditions necessarily to establish a hostile work environment.  First, over the course of over two years, plaintiff identifies two occasions where she was on the same shift as Officer Eisenmann. During these two shifts, plaintiff remained separated and without contact. (Doc. 20-4 at 9). Next, plaintiff identifies an email that Officer Eisenmann sent to her related to an inmate being "released from the SHU last week I believe and said he did not receive his property. Can you please check and see if he has any property at all in the property room. Thank you." (Doc. 25). The frequency of the incidents occurs over a period of over two years with three incidents being identified. The severity of the incidents is minor at best. There was no true contact between Officer Stein and Officer Eisenmann. Officer

Eisenmann was merely present at the same workplace as Officer Stein on two occasions. The only form of direct contact was an email sent from Officer Eisenmann to Officer Stein, which is not enough to show some severity or pervasiveness.

Next, plaintiff must prove the discrimination detrimentally affected her through subjective perception that the work environment is offensive, hostile, or abusive. Harris, 510 U.S. at 21.

Plaintiff alleges she was detrimentally affected through the actions of Officer Eisenmann. She claims she had to take unpaid leave from work, attain a PFA, was forced to work with Officer Eisenmann, was removed from special assignments and denied promotions and awards.

Next, the plaintiff must demonstrate that a reasonable person would find the environment offensive, hostile, or abusive. Id.

A reasonable person would not find the environment offensive, hostile or abusive. As was previously explained, having plaintiff work in proximity of Officer Eisenmann on the two identified occasions would not lead a reasonable person to believe the environment is offensive, hostile, or abusive. Kokinchak, 677 F. App'x at 767-68. Officer Eisenmann's one email related to an inmate's property would not lead a reasonable person to find

the environment to be offensive, hostile, or abusive. The three limited occasions identified by plaintiff simply do not give rise to an offensive, hostile, or abusive environment.

Plaintiff's claim about being required to get a PFA stems from more than just an interaction in the workplace. The PFA served to protect plaintiff in both her time at work and outside of work. The actions that occurred on August 8, 2017 are not the only actions that contributed to the PFA. Additionally, the defendant did not require plaintiff to get a PFA. Defendant excused Officer Stein from work in order for her to be able to get an emergency PFA.

Plaintiff states she was denied promotions and awards, but does not identify any specific promotions or awards in her brief or answer to defendant's statement of material facts. (Doc. 20 and Doc. 21). Plaintiff does not cite to anywhere in the record to support this claim.

Plaintiff was originally marked AWOL for time she took off after depleting her sick and annual leave time. However, plaintiff's time was corrected to leave without pay. (Doc 17-1 at 335-36). A reasonable person would not find plaintiff being required to take unpaid leave from work after

depleting her sick and annual leave to take care of private state court matters as a hostile, offensive, or abusive environment.

An employer is liable for a harassing employee when they are negligent in controlling working conditions. <u>Vance v. Ball State University</u>, 570 U.S. 421, 424 (2013). Under this negligence standard, "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action," then the employer is liable for failure to adequately respond to harassment. <u>Knabe v. Boury Corp.</u>, 114 F.3d 407, 411 (3d Cir. 1997).

Here, on the same day that the August 8, 2017 incident took place, Warden Baltazar convened a Threat Assessment Committee, interviewed Officer Eisenmann within hours of the incident, and the committee later interviewed Officer Stein. The PPP for Officer Stein took prompt and remedial action to separate both Officer Stein and Officer Eisenmann by placing them at different work sites and not allowing communication from Officer Eisenmann to Officer Stein. After the PFA was modified to allow Officer Eisenmann to work at the same site as Officer Stein, the two would not work the same shift at the same location until February of 2019. Officer

Eisenmann would exit the incoming employee screening room where Officer Stein was located, but there was no contact between them. In October of 2019, Officer Eisenmann voluntarily took two shifts at USP Canaan with Officer Stein. The two October 2019 shifts included nothing more than glares or crossed arms. The defendant kept the two parties separate and explicitly told Officer Stein to remain in the property room to ensure separation. The defendant promptly and adequately addressed the situation to the point where Officer Stein and Officer Eisenmann did not have any verbal or physical altercations following her return to work from her injury. (Doc. 20-4 at 1-23).

### b. Retaliation Claim

Title VII prohibits an employer from discriminating "against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a). A Title VII retaliation claims must be analyzed under the shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A plaintiff must first establish a *prima facie* case of retaliation, which requires

evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). Once the plaintiff establishes a *prima facie* case of retaliation, the burden then shifts back onto the defendant to provide a legitimate, non-discriminatory reason for a plaintiff's adverse employment action. The final step of the McDonnell-Douglas framework requires the burden then shift back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is pretext], and that the retaliation was the real reason for the adverse employment action. Carvalho-Grevious v. Delaware State University, 851 F.3d 249, 257 (3d Cir. 2017) (alteration in original) (quoting Moore, 461 F.3d at 342)).

Here, defendant does not dispute that plaintiff engaged in protected activity in 2014. The defendant disputes the second and third factor that plaintiff suffered a materially adverse employment action and that there was a causal connection between her participation in the protected activity and the adverse employment action. First, plaintiff argues that she was denied

administrative leave wrongfully. Plaintiff identifies language from the union representative stating because one female was already out on paid leave that she would be denied administrative leave. Second, plaintiff alleges she was marked AWOL to make it appear that she did not show up for her post and therefore generate animosity amongst her coworkers as they would need to pick up the shift. Third, plaintiff alleges she was passed up for awards and positions in relation to her 2014 activity. Lastly, plaintiff contends the defendant intentionally scheduled her with Officer Eisenmann to intimidate her and prevent her from working. Each of plaintiff's arguments will be addressed in turn.

Plaintiff asserts protected activity stemming from her 2014 EEO activity and EEO activity related to the August 8, 2017 incident. The 2014 EEO activity is too far removed from any actions in this case for there to be a causal connection. From the 2014 incident, the three years that passed are not "unusually suggestive of retaliatory motive." Petti v. Ocean Cnty. Bd. of Health, 831 F. App'x 59, 64 (3d Cir. 2020) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that a gap of over two months, taken alone, is insufficient to be "unduly suggestive" of retaliation), superseded by statute on other grounds as stated in Robinson

v. First State Cmty. Action Agency, 920 F.3d 182, 187-89 & n.30 (3d Cir. 2019).

This leaves the 2017 EEO activity as the sole ground to base retaliatory activity upon. When the decision-makers are unaware of plaintiff's protected activity, then there can be no causal connection between the protected activity and the resulting adverse employment action. Jones v. School Dist. Of Phila., 198 F.3d 403, 414 (1999). Warden Baltazar and Captain Hollingsworth were unaware of Officer Stein's EEO activity when deciding upon her administrative leave request. Captain Hollingsworth learned of Officer Stein's 2017 EEO activity on October 12, 2017 when an EEO counselor contacted him. (Doc. 17 at ¶157; Doc. 20 at ¶157). Warden Baltazar learned of Officer Stein's 2017 EEO activity on October 18, 2017 when the EEO counselor contacted him. (Doc. 17 at ¶153; Doc. 20 at ¶153). As plaintiff indicated, she requested leave from Captain Hollingsworth on September 26, 2017, (Doc. 20-4 at 5), and requested leave from human resources on September 27, 2017, (Doc. 20-4 at 5). Without knowledge of the protected activity, defendant could not have retaliated against the plaintiff. See Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (explaining that "[i]t is only intuitive that for protected conduct to be a

substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct").

Plaintiff then argues that she was marked AWOL to cause discord with her co-workers. The Supreme Court has defined adverse employment actions as actions that "inflict[] direct economic harm." Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 762 (1998). The Third Circuit has further defined an adverse employment action as "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Bums Int'l Servs., 390 F.3d 760, 764 (3d Cir. 2004) (citations omitted).

In this matter, there is no "direct economic harm" suffered by plaintiff. Unhappy co-workers may not be a pleasant experience, but does not rise to the level an adverse employment action. Additionally, plaintiff's time was corrected to leave without pay. (Doc 17-1 at 335-36). If the complained-of inconvenience has been completely remedied and the correction would not dissuade a reasonable employee from complaining about the incident, then there is no claim of retaliation. Ponton v. AFSCME, 395 F. App'x 867, 874 (3d Cir. 2010) (finding no retaliation when employee received the requested

route sheet and would not have been dissuaded by the incident from complaining about unlawful conduct).

Plaintiff then asserts a vague argument that the defendant prevented her from achieving promotions or receiving awards. Plaintiff does not indicate in the record where or when these denials occurred. Plaintiff simply puts forth a blanket assertion lacking support within the record. Beyond plaintiff's mere allegations, she offers no specific evidence of positions or awards she was passed up for due to her protected activity. Rowan v. City of Bayonne, 474 F. App'x 875, 878 (3d Cir. 2012) (explaining that without identifying any instances of failure to promote, the claim must fail); see also Walton v. Harker, 33 F.4th 165, 176 (4th Cir. 2022) (explaining that plaintiff's allegation were not sufficient because they did not "specify any promotion for which she applied and was denied, proffer any comparators that were given promotions for which she was more qualified, articulate the qualifications for the position and why she met them"). Plaintiff had ample opportunity during discover to provide specific evidence of her claims, but plaintiff's failure now proves fatal.

Lastly, plaintiff alleges the defendant intentionally scheduled her with Officer Eisenmann in order to retaliate against her for her protected activity. Plaintiff acknowledges that the defendant did not assign or schedule Officer

Eisenmann for the October 17, 2019 shift or the October 24, 2019 shift, but rather, Officer Eisenmann volunteered to cover these shifts. (Doc. 24). Even had Officer Eisenmann glared at her or crossed his arms on one of these occasions, these actions are far from being "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey, 390 F.3d at 764.

Plaintiff has failed to establish a *prima facie* case of retaliation by the defendant.

### III.   CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, (Doc. 15), is **GRANTED**.

An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 29, 2022**
21-cv-272-01